EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

William Darnell and Jeremy
Fass, Intervenors,

v.

WAL–MART STORES,
INC., Defendant.

No. CIV 98–276–TUC–WDB.

United States District Court,
D. Arizona.

June 13, 2001.

---

Mary Joleen O'Neill, Richard R. Trujillo, P. David Lopez, Equal Employment Opportunity Commission, Phoenix, AZ, for Equal Employment Opportunity Commission, plaintiff.

Lawrence Allen Katz, Steptoe & Johnson LLP, Phoenix, AZ, Gregory S. Muzingo, Bentonville, AR, for Wal–Mart Stores Inc., defendant.

Rose Ann Daly–Rooney, Arizona Ctr. for Disability Law, Tucson, AZ, for William Darnell, Jeremy Fass, intervenor-plaintiffs.

## ORDER

WILLIAM D. BROWNING, Senior District Judge.

Pending before the Court is Plaintiff's Application for an order to show cause concerning Wal–Mart's alleged failure to comply with a consent decree entered by the parties January 6, 2000. Additionally, Plaintiff's have filed a Motion for Sanctions. Hearing on the issues was held May 29, 2001, and supplemental filings have been made by the parties.

## BACKGROUND

Intervenors are hearing-impaired individuals who had applied for positions with Wal–Mart in Tucson. After they were not hired by Wal–Mart, they alleged violations of the Americans with Disabilities Act ("ADA"). Plaintiff further alleged that Wal–Mart violated the ADA requirements governing retention of records after obtaining notice of the filing of charges of discrimination. Rather than go on to trial, the parties entered into a consent decree, approved by this Court. The Consent Decree requires Wal–Mart to take several actions to remedy the discrimination against the Intervenors, to prevent future discrimination against hearing-impaired persons and to permit the Intervenors and others to work effectively for Wal–Mart. Thus, Wal–Mart was required to pay back pay, compensatory damages, and interest to the Intervenors, pay their attorney's fees, credit their profit-sharing plans with the amounts they would have accumulated had they been hired in September, 1995; reimburse them for medical expenses that would have been covered under Wal–Mart's medical plan, offer each a full-time job; and provide accommodations, including interpreters for specified training and meetings, and an in-store teletype telephone ("TTY"). More generally, Wal–Mart is required to provide staff training on ADA issues to managers in Tucson, Phoenix, and Green Valley, including training on non-discrimination in hiring and recruitment, provision of reasonable accommodations, and communication techniques to utilize with hearing-impaired individuals. This training was to include a session on the ADA by Wal–Mart's lawyer, and a session, video-taped for future use, with one of three experts recommended by Plaintiff on communication with the hearing-impaired. The parties were also to conduct a tour of the stores to determine if the appropriate steps had been taken. Wal–Mart was also to develop a version of its computer-based learning ("CBL") modules in American Sign Language ("ASL")

and provide company-wide notice about the availability of these modules and captioned training videos. Wal–Mart was required to also modify its existing policy on the provision of reasonable accommodations.

The Decree is set to expire eighteen (18) months after the entry date—July 6, 2001. In the meantime, Wal–Mart was to report in writing in affidavit format to the Commission every six (6) months to attest that Wal–Mart had taken the actions required by the Consent Decree. The first affidavit was due July 6, 2000. No affidavit was received, although a letter was finally received by Plaintiff after December 8, 2000, after repeated efforts by Plaintiff to communicate with Wal–Mart. Only after this Motion was filed, did Wal–Mart provide the parties with an affidavit outlining its compliance.

**FINDINGS OF FACT**

Because Wal–Mart has failed to timely report on the steps it has taken in order to comply with the Consent Decree, it is difficult to know entirely how it has complied. However, it appears that Wal–Mart hired and trained the Intervenors, paid them back pay, compensatory damages, and interest, paid their attorney's fees, credited their profit-sharing plans; and reimbursed them for medical expenses that would have been covered under Wal–Mart's medical plan.

As for providing Intervenors with accommodations, including interpreters for specified training and meetings, and an in-store teletype telephone ("TTY"), the evidence is less clear. While Wal–Mart provided them with interpreters during their training and installed TTYs, no interpreter or alternative means of communication was provided after their training was completed, although one was required for any meeting scheduled 24 hours in advance. As a result, William Darnell had no means of learning what was being said at daily crew meetings, other than hastily written notes, after the fact, by his supervisor. These notes were grudgingly given and often made Mr. Darnell late beginning work. Because the notes given to him were often incomplete, Mr. Darnell did not know changes in stocking procedures, shift times or other issues, making it much more difficult to do his job. Moreover, rather than provide flexible accommodations to Mr. Darnell, it appears that Wal–Mart attempted to "warehouse" Mr. Darnell by only permitting him to work in a certain area of the store, instead of rotating through the various areas like his co-workers. This led to his being viewed as different or less-abled by his co-workers and customers. Mr. Darnell has since left his employment with Wal–Mart. Mr. Fass has also left Wal–Mart.

Moreover, it is clear that Wal–Mart has failed to comply with the letter of the Consent Decree concerning the training of its staff in the requirements of the ADA and in communication methods with the hearing-impaired. This training was to have occurred within 180 days of the signing of the Decree. Wal–Mart has claimed that the legal portion of the ADA training was not completed in a timely fashion because the staff attorney who had been slated to conduct the training had an extended maternity leave. This explanation is insufficient for a company as large as Wal–Mart, who in addition to corporate counsel has retained counsel in Arizona who are perfectly capable of conducting such training. Additionally, Wal–Mart failed to contact any of the three outside trainers named in the Consent Decree to train personnel, and videotape their training session, so that it could be shown to the Intervenors' co-workers. This was to have been done within 30 days of the signing of the Decree. Considering that this training was intended to aid Intervenors' after beginning work with Wal–Mart,

the company's non-compliance is inexcusable.

Likewise, Wal–Mart has failed to translate its CBLs as it agreed to do. Although there is some evidence that Wal–Mart asked if it could translate the CBLs into English text, rather than include an ASL translation, there is no evidence that Wal–Mart made a formal request to the Plaintiff or filed a motion to modify the Decree before the deadline for compliance.

Accordingly,

■ **IT IS HEREBY ORDERED** that Wal–Mart is in contempt of court for failing to comply with terms of the Consent Decree, in particular, Paragraphs 13, 18, 26 and subparagraphs 26(a)–(e).

■ **IT IS FURTHER ORDERED** that the Plaintiff's Motion for Sanctions is **GRANTED** and Wal–Mart shall pay, by July 6, 2001, the following amounts:

1. *$750,200*, the total of *$100* per day for each of the 22 stores in Phoenix, Tucson, and Green Valley, for *341* days, the total number of days Wal–Mart has been out of compliance on all three of the following requirements: (1) provision of CBL modules in ASL format; (2) provision of training on the legal requirements of the ADA; and (3) provision of training on disability issues. The sanction shall be paid to the Arizona Center for Disability Law, to be used for advocacy related to employment of individuals with hearing-related disabilities.

2. The reasonable attorneys fees and costs incurred by the EEOC and the ACDL in gaining full compliance with any and all requirements of the Consent Decree, to be paid to the EEOC and the ACDL, respectively.

3. The amount of wages Mr. Darnell would have earned had there not been an interruption in employment, less any wages earned from employment since his resignation through his date of reinstatement, with the sanction paid to Mr. Darnell.

**IT IS FURTHER ORDERED** that Wal–Mart shall prepare, film and air a television advertisement, in the same style and with the same production value as its customary television advertisements featuring Wal–Mart employees, a 30 second or longer television advertisement stating the purposes of the ADA, that Wal–Mart has in the past violated the ADA, and referring people who believe they have been discriminated against on the basis of a disability to the EEOC or Arizona Center for Disability Law. The advertisement shall be approved by the Plaintiff and the ACDL before it may be aired, and Wal–Mart shall make any reasonable changes called for by Plaintiff. The advertisement shall be aired for a period of two weeks, no later than October 1, 2001, on the three (3) national broadcasting companies (ABC, CBS, and NBC) in Phoenix and Tucson, at least once a day between the hours of 7:00 a.m. and 9:00 a.m. or between 5:00 p.m. and 10:30 p.m., Arizona time.

**IT IS FURTHER ORDERED** that the duration of the Consent Decree in this matter is extended by eighteen (18) months, to November 29, 2002

**IT IS FURTHER ORDERED** that Wal–Mart shall take the following steps with respect to Intervenor William Darnell:

1. By June 25, 2001, reinstate Mr. Darnell to a full-time position as receiver/unloader in a Tucson Wal–Mart store other than the store located at 455 East Wetmore, at the same rate of pay he was earning in November 2000, plus any cost of living increases awarded to Wal–Mart employees since that date;

2. Immediately upon reinstatement, adjust Mr. Darnell's personnel and company records to reflect a corporate service date of September 1, 1995, with no interruption in service. Consistent with Paragraph 9 of the Consent Decree, the corporate service date of September 1, 1995, will be the basis for determining Mr. Darnell's entitlement to wage increases and benefits, consistent with all applicable Wal–Mart policies and procedures for hourly employees;

3. Immediately upon reinstatement, re-enroll Mr. Darnell in any and all benefit plans, including but not limited to medical, pharmacy and dental benefit plans, effective the first day of his reinstatement;

4. Continue to provide Mr. Darnell with the accommodations set forth in Paragraphs 11–16 of the Consent Decree for its extended duration;

5. By June 29, 2001, arrange for Plaintiff Intervenors' expert and a certified sign language interpreter to attend three (3) daily crew meetings for receivers and unloaders at the store where Mr. Darnell is hired. At the meetings, the expert will observe and ask questions in order to determine a reasonable and effective method of accommodating Mr. Darnell during such meetings. By July 13, 2001, the expert shall provide a report containing recommendations about reasonable and effective accommodations for Mr. Darnell;

6. Implement the expert's recommendations for accommodating Mr. Darnell at crew meetings by July 31, 2001;

7. Until the accommodations are implemented, provide a qualified sign language interpreter for all crew meetings on days that Mr. Darnell works;

8. Compensate the expert for the reasonable time spent to participate in the meeting and prepare the report, and for all reasonable costs incurred by August 17, 2001.

**IT IS FURTHER ORDERED** that Wal–Mart shall take the following steps to comply with paragraph 18 of the Consent Decree, requiring it to develop a set of CBL modules in an ASL format:

1. Develop the CBL modules in ASL format by July 13, 2001.

2. Arrange an inspection by Plaintiff Intervenors' expert to evaluate whether the new ASL format is an accurate and accessible translation of the information contained in the current CBL modules, by July 31, 2001. The expert report containing his or her evaluation shall be submitted to Wal–Mart by August 31, 2001.

3. Compensate the expert for the reasonable time spent to inspect the CBL modules and prepare the report, and for all reasonable costs incurred by September 28, 2001.

4. Make any necessary reasonable modification proposed by Plaintiff Intervenors' expert by September 28, 2001.

5. Send a notice of the availability of the ASL version to all Wal–Mart stores by September 5, 2001, if the expert does not recommend modifications, or by October 5, 2001, if the expert recommends modifications.

**IT IS FURTHER ORDERED** that Wal–Mart shall comply with all provisions of paragraph 26 of the Consent Decree, governing training, by June 29, 2001, and shall invite Plaintiff Intervenors Fass and Darnell, and a certified sign language interpreter, to attend the training sessions to explain problems they experienced while working for Wal–Mart.

IT IS FURTHER ORDERED that Wal–Mart shall videotape the portion of the training addressing disability awareness issues, as required in paragraph 26(e) of the Consent Decree, and show it to all employees at Wal–Mart stores in Phoenix, Tucson, and Green Valley who employ a hearing-impaired employee, including the store that employs Mr. Darnell, by July 16, 2001.

IT IS FURTHER ORDERED that Wal–Mart shall submit to the Court by June 29, 2001, a detailed affidavit explaining the extent of its compliance with each paragraph of the Consent Decree. The affidavit shall include dates and documentation in support of the avowals therein.

IT IS FURTHER ORDERED that Wal–Mart shall pay penalties for further noncompliance with the Consent Decree or this Order in the amount of *$150* per day for each of the 22 stores in Phoenix, Tucson, and Green Valley.

IT IS FURTHER ORDERED setting a hearing to assess Wal–Mart's compliance with the Consent Decree and this Order on Tuesday, July 31, 2001 at 9:30 a.m.